## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

RHONDIA R.,[1]

                Plaintiff,

v.                                                Action No. 2:23cv68

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

                Defendant.

### UNITED STATES MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

Rhondia R. ("plaintiff") brought this action, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An order of reference assigned this matter to the undersigned. ECF No. 6. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is recommended that plaintiff's request for a remand (ECF No. 10) be **GRANTED**, the Commissioner's decision be **VACATED**, and the case be **REMANDED** to the Commissioner.

---

[1] In accordance with a committee recommendation of the Judicial Conference, plaintiff's last name has been redacted for privacy reasons. Comm. on Ct. Admin. & Case Mgmt. Jud. Conf. U.S., Privacy Concern Regarding Social Security and Immigration Opinions 3 (2018).

## I.  PROCEDURAL BACKGROUND

Plaintiff initially applied for SSI on August 14, 2020.[2]  R. 226–32.  Plaintiff alleges disability beginning March 31, 2020.[3]  R. 249.  Plaintiff alleges disability due to blindness or low vision, nephropathy, degenerative disc disease, attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), anxiety, and bipolar disorder.  R. 253.

After the state agency denied her claim both initially and on reconsideration, R. 114–18, 122–24, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), R. 125–27. ALJ Anthony Johnson, Jr., held a video hearing on June 10, 2022, R. 43–73, and issued a decision denying benefits on July 11, 2022. R. 16–33. On December 22, 2022, the Appeals Council denied plaintiff's request for review of the ALJ's decision. R. 3–10. Therefore, the ALJ's decision stands as the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. §§ 405(h), 1383(c)(3); 20 C.F.R. § 416.1481.

Having exhausted administrative remedies, plaintiff filed a complaint on February 22, 2023. ECF No. 1. In response to the Court's order, plaintiff filed a brief ("Pl.'s Br.") on June 22, 2023, ECF No. 10, and the Commissioner filed a brief in support of the decision denying benefits on July 24, 2023, ECF No. 11. Plaintiff replied on August 7, 2023. ECF No. 12. As oral argument is unnecessary, this case is ripe for a decision.

## II.  RELEVANT FACTUAL BACKGROUND

On appeal, plaintiff argues that the ALJ failed to account for the total limiting effects of

---

[2] Page citations are to the administrative record that the Commissioner previously filed with the Court.

[3] Prior to the current application, plaintiff filed an application for Title II disability insurance benefits and Title XVI supplemental security income, which was denied initially, on reconsideration, and in a decision issued by ALJ Bailey Smith on March 30, 2020. R. 19.

plaintiff's impairments, and, specifically, that the ALJ's findings as to Dr. Bridges and NP Bocanegra's opinions were unsupported and inconsistent with the record.  Pl.'s Br., ECF No. 10, at 9–15; *see* 20 C.F.R. § 416.920c(b).  In conjunction, plaintiff asserts that the ALJ did not appropriately evaluate her self-described limitations as required by *Arakas v. Comm'r Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020).  Pl.'s Br. 1, 15–17. The Court's review of the facts below is tailored to this argument.

**A.**    ***Background Information and Hearing Testimony by Plaintiff***

Plaintiff, represented by counsel, testified before ALJ Johnson on June 10, 2022.  R. 43–73. Plaintiff is a high school graduate, and attended some college.  R. 66.

Before stopping work in 2015, plaintiff worked as an associate at a tanning salon.  R. 54, 241, 289–91.  She described this work as checking-in clients, cleaning rooms, washing and folding towels, and ordering and stocking supplies.  R. 57–58, 290.  Plaintiff stated that she occasionally had to lift supply boxes and laundry baskets, and that she had to lift the lid of the tanning bed a couple times each night, which was roughly between 20 to 30 pounds.  R. 54, 290.

Plaintiff testified that she has severe pain in her lower back, which has gotten progressively worse.  R. 50.  Plaintiff stated that she can stand for up to 10 minutes before her back gets weak and her knees give out from underneath her.  R. 51.  She further testified that she needs to stand after about 10 minutes of sitting due to severe back pain, causing her to constantly alternate between sitting and standing.  R. 51–52.  Plaintiff stated that she can walk up to "half a block."  R. 52–53.  Plaintiff also has decreased sensation to touch in both of her legs, and testified that the numbness in her feet causes her to "walk out of [her] shoes," but noted this is not a problem when she wears tight shoes.  R. 53.  Moreover, plaintiff testified that nerve damage in her feet causes them to "feel like they're on fire or [] like they're freezing."  R. 50.

3

Plaintiff stated that she has dropped dishes due to neuropathy in her hands, and that she sits down when holding her grandson, who weighed about 16 pounds at the time of hearing, because she is afraid of dropping him. R. 63. Plaintiff testified to using a back brace and a transcutaneous electrical nerve stimulation ("TENS") unit for her back, and that she takes Naproxen and uses lidocaine patches for pain. R. 54–55, 63. Plaintiff stated that her back has gotten worse, to the point that the TENS unit and lidocaine patches no longer help with the pain. R. 63.

Regarding her mental health, plaintiff testified that she suffers from anxiety, ADHD, and bipolar disorder, which have all gotten worse over time. R. 57, 62. As to anxiety, plaintiff stated that she has frequent, severe panic attacks that occur two to three times per day. R. 57, 60. She testified that these attacks usually last five to seven minutes and can cause her to become very nervous or become "totally out of it." R. 60. Plaintiff stated that the attacks can occur at any time, at home or in public. R. 59. As to ADHD, plaintiff testified that Adderall allows her to stay roughly 70% focused until three or four o'clock in the afternoon. R. 58–59. Plaintiff also stated that she suffers from bipolar disorder, which causes mood swings and irritability. R. 57, 61. She has gotten into verbal altercations as a result, but never a physical altercation. R. 61.

Plaintiff lives with her daughter, who helps her with basic activities of daily living. R. 64. Plaintiff stated that she can no longer do the dishes because she will drop and break them, that she can sit and fold clothes but cannot carry the laundry basket, that she does not push the vacuum, and that she does not go up or down stairs. *Id.* Further, plaintiff testified that she cooks while sitting on a stool in the kitchen, and that she uses a shower seat when she bathes. *Id.* In an average day, plaintiff stated that she spends about half of her time sitting and half standing, constantly alternating between positions due to back and foot pain. R. 64–65.

4

In a function report completed in February 2021, plaintiff provided similar information. R. 273–80. Namely, plaintiff stated that she cannot sit or stand for any length of time, she frequently walks out of her shoes due to numbness in her feet, she needs something to hold onto when walking, she sits down while bathing and cooking, and that she suffers from panic attacks. R. 273–75. Plaintiff also stated that the numbness in her feet makes it painful to sleep. R. 274. Plaintiff's hobbies include sewing, shopping, and doing crafts. R. 277. She goes to church, the grocery store, and the convenience store, preferring for someone to accompany her. *Id.* Plaintiff also stated that she is able to finish what she starts and follows instructions well. R. 278. Further, plaintiff noted that she uses a back brace and a TENS unit "all the time." R. 279.

## B.   *Hearing Testimony by Vocational Expert*

Charles Smolkin, a vocational expert ("VE"), also testified. R. 65–71. In response to the ALJ's hypothetical[4], VE Smolkin testified that such a person could perform light work in the national economy as a cashier II, a marker, and a small products assembler. R. 66–67. VE Smolkin also testified that, if the individual were further limited[5], the individual would still be able to

---

[4] The hypothetical prescribed an individual closely approaching advanced age, with a high school education and no past relevant work who is limited to: (1) occasional lifting, carrying, pushing, and pulling 20 pounds; (2) frequent lifting, carrying, pushing, and pulling 10 pounds; (3) standing and/or walking six hours in an eight-hour workday; (4) sitting six or more hours in an eight-hour workday; (5) frequent balancing and climbing of ramps and stairs; (6) occasional stooping, kneeling, crouching, crawling, and exposure to concentrated hazards such as unprotected heights and moving dangerous, industrial machinery; and (7) never climbing ladders, ropes, or scaffolds. R. 66.

[5] The amended hypothetical prescribed the same limitations, but added that the individual would be limited to: (1) understanding, remembering, and carrying out simple and routine instructions; (2) concentrating on work-related tasks for up to two hours before needing an ordinary break; (3) performing at a non-production rate pace; (4) working non-assembly line paced jobs involving no more than occasional workplace changes and occasional independent decision-making; (5) no responsibility for the safety of others; and (6) occasional interaction with the general public, coworkers, and supervisors. R. 67.

perform these jobs, but the number would be limited by 25%. R. 67. Further, VE Smolkin testified that, if the individual were able to stand and/or walk for only four hours in an eight-hour workday, were able to sit for six or more hours in an eight-hour workday, and the combination of standing, walking, and sitting would meet or exceed eight hours, the individual would be able to perform light work as a cashier II, router, and office helper. R. 67–68.

However, if the individual were limited to occasionally lifting, carrying, pushing, and pulling 10 pounds, frequently lifting, carrying, pushing, and pulling five pounds, and standing and/or walking two hours in an eight-hour workday, along with the other remaining limitations, VE Smolkin testified that these light jobs would be ruled out and the individual would only be able to perform sedentary and unskilled work. R. 68. Moreover, VE Smolkin testified that being off task 15% of the time or more, as well as missing work repetitively, but unpredictably, two times per month or more, would preclude all work. R. 69.

In response to questions from plaintiff's attorney, VE Smolkin testified that the difference between light and sedentary work is that light work requires being able to occasionally lift up to 20 pounds. R. 69–70. VE Smolkin also clarified that neither the cashier II or router position would require more than occasional interaction with coworkers, supervisors, or the general public. R. 70.

## C.   *Relevant Medical Record* [6]

### 1.   *Treatment with Blue Ridge Medical Center*

Plaintiff treated with Blue Ridge Medical Center on a handful of occasions from January 2016 to September 2017. R. 379–98. On at least two occasions in April and September 2017,

---

[6] Plaintiff argues that the ALJ erred in finding that plaintiff's physical impairments do not preclude light work. Pl.'s Br. 9–16. Further, plaintiff "assigns no error regarding the mental portion of [the ALJ's RFC] finding." Pl.'s Br. 2, n.3. The Court will review the medical record accordingly.

plaintiff presented for back and foot pain.[7]  R. 379, 386.  In April 2017, a physical examination found plaintiff to have lumbar and lumbosacral tenderness, as well as tenderness in her spinous processes and paraspinal muscles.  R. 387.  Further, she exhibited tenderness during a straight leg raising test, associated with lower back pain on each side.  *Id.*  Plaintiff was assessed with peripheral neuropathy and lumbosacral back pain, for which she was prescribed Gabapentin and Lidoderm.  R. 389.  In September 2017, plaintiff was again assessed with lumbosacral back pain, as well as left foot pain.  R. 380.

2.    ***Treatment with Pain Care Center of Lynchburg***

Plaintiff treated with the Pain Care Center of Lynchburg on at least three occasions from June to September 2017.  R. 341–50, 366–71, 404–17.  On each occasion, plaintiff reported low back pain that radiates to both legs.  R. 341, 347, 366.  At her initial evaluation in June 2017, plaintiff reported that the pain began eight years ago and started gradually, but was continuous and getting worse.  R. 366.  Treatment notes indicate that plaintiff described her pain as "increased or made worse by bending, chores, lifting, pushing [and] pulling, sitting, twisting, walking and weather changes."  *Id.*  Moreover, her associated symptoms include "leg numbness, leg weakness, hand clumsiness from carpal tunnel disease, joint stiffness, and muscle spasms."  *Id.*  Plaintiff reported previously attempting to treat her symptoms with physical therapy, a TENS unit, and a back brace, and she stated that oxycodone "decreases [her] pain from 10/10 to 9/10."  *Id.*  On examination, plaintiff's findings were mostly normal, although she was found to have a bilateral paraspinal trigger point and tenderness, as well as pain when moving her pelvis and hip in a normal range of motion.   R. 368–69.   Plaintiff  was  diagnosed  with  chronic  pain  syndrome  and

---

[7] On the other occasions, plaintiff presented for chest pain, facial pain, and pain in the aftermath of carpal tunnel surgery performed on plaintiff in January 2017.  R. 391, 396, 401–03, 418–19.

radiculopathy in the lumbosacral region, and was prescribed a lumbar-sacral-orthosis, a 4-lead TENS unit, and a conductive garment for use with electro-therapy. R. 370–71. At two follow-up visits, plaintiff reported constant pain that became worse without taking Neurontin in the two days prior. R. 341, 347.

### 3.   X-ray at Lynchburg General Hospital

On May 2, 2019, plaintiff presented to Lynchburg General Hospital for an x-ray of her lumbosacral spine. R. 514. The reviewing doctor found that plaintiff's lumbar alignment and intervertebral disc spaces were preserved, her vertebral body height was maintained, and there was no evidence for acute fracture of subluxation. *Id.* The doctor also found tiny endplate bone spurs reflecting minimal degenerative change, no evidence for acute osseous disease involving the lumbar spine, and moderate facet arthropathy at L5-S1. *Id.*

### 4.   Consultative Examination by Travis Bridges, DO – April 27, 2019

On April 27, 2019, Dr. Bridges performed a consultative examination on plaintiff for her low back pain and lower extremity neuropathy. R. 455–59. Dr. Bridges' report was based on his review of plaintiff's treatment records from the Pain Care Center of Lynchburg, as well as his interview of plaintiff. R. 455. Dr. Bridges noted that plaintiff's back pain started around 2012 and has progressively worsened. *Id.* He also noted that plaintiff's "[p]ain [is] located across [the] entire low back, radiates into buttock on both sides. Pain [is] worse with prolonged standing and sitting." *Id.* Further, Dr. Bridges noted that plaintiff has suffered from lower extremity neuropathy since 2015, and that the pain in her bilateral feet has been progressively worsening. *Id.* Plaintiff stated the foot pain is worse when standing, walking, and wearing shoes, and that she feels numbness, tingling, and throbbing in her feet. *Id.* Dr. Bridges also noted that plaintiff uses a TENS unit, wears a back brace, uses gel socks for her feet, and has taken gabapentin, naproxen,

aleve, dilaudid, and oxycodone for pain. *Id.* Moreover, Dr. Bridges noted that plaintiff completed physical therapy in 2017 and previously went to a pain center, but stopped because she was unable to afford the co-pay. *Id.*

Dr. Bridges indicated that plaintiff was able to perform basic daily living activities independently, that she does some cooking and cleaning around the house with breaks between activities, and that she "cuts the grass, quilts, [and] does custom cedar woodworking." *Id.* During his systems review and physical examination, Dr. Bridges noted that plaintiff reported general weakness, joint pain, back pain, numbness, and tingling. R. 456. Dr. Bridges also noted plaintiff was able to rise from the waiting room chair independently. *Id.* Dr. Bridges also found that plaintiff's pulses in her extremities are "palpable bilaterally radially," that she has a non-antalgic gait, and does not walk with an assistive device. R. 457. Moreover, he found that plaintiff's sensation in her upper and lower extremities was bilaterally intact, although she had "decreased sensation in bilateral feet to light touch." R. 458. Dr. Bridges' general findings were as follows:

> Sitting comfortably in no acute distress. Lumbar spine midline with decreased lumbar lordosis. Hypertonic lumbar paraspinal muscles and tenderness to palpation over her lumbar paraspinal muscles. Increased lumbar pain with lumbar facet loading maneuvers. Negative straight leg raise bilaterally. She has five/five strength in upper and lower extremities. Decreased sensation to light touch in bilateral feet. She has normal gait, non-antalgic. She can tandem gait and walk on toes/heels. She appears in pain when walking without shoes due to pain in her feet. Lower extremity reflexes are symmetric.

R. 458–59. Dr. Bridges opined that plaintiff's low back pain and lower extremity neuropathy diagnoses were fair and credible given the exam findings. R. 459.

In his medical source statement, Dr. Bridges found that plaintiff could walk for less than two hours in an eight-hour workday, that she could sit for about four to six hours in an eight-hour workday, that she can occasionally carry ten pounds, and frequently carry less than ten pounds.

9

*Id.* Further, he found that plaintiff should be able to frequently reach, handle, grasp, and finger, and rarely bend, stoop, crouch, and squat, due to low back pain. *Id.*

### 5. *Consultative Examination by Benita Bocanegra, NP – May 15, 2022*

On May 15, 2022, Benita Bocanegra, NP, performed a consultative examination on plaintiff in connection with her complaints of neuropathy and degenerative disc disease.[8] R. 617–23. NP Bocanegra noted that plaintiff has dealt with neuropathy and degenerative disc disease for about ten years, and that the pain and numbness is constant and worse with standing. R. 617.

NP Bocanegra noted that plaintiff was able to bathe, dress, eat, and cook by herself, but that she needed assistance cleaning, doing dishes, and vacuuming due to pain. *Id.* She further noted that plaintiff has general weakness, but that she was in no acute distress, was able to rise from the waiting room chair independently, and was able to take her shoes and socks off without assistance. R. 618–19. NP Bocanegra also stated that plaintiff's coordination was intact, she had a normal base of support, a non-antalgic gait, did not walk with an assistive device, and has sufficient strength in her extremities, but that she had "[d]ecreased sensation to light touch in bilateral feet." R. 621. She also noted that plaintiff's range of motion in her cervical and thoracolumbar spine are within the normal range, although she had trigger points, and exhibited paraspinal muscle tenderness. R. 621–22. NP Bocanegra generally found that:

> Exam findings reveal a diaphoretic but pleasant individual. She appears anxious and restless during the exam. Her spine is midline with tenderness with palpation. She had a positive straight leg raise bilaterally. She [had] a normal gait and stance. Balance intact. Normal grip strength and ROM throughout. She has decreased sensation to touch [in her] bilateral feet and lower extremities up to mid-calf. Skin is normal and intact. She was alert and oriented, cooperative throughout the exam.

---

[8] The examination also evaluated plaintiff's mental health disorders, but as plaintiff does not argue the ALJ's mental health findings were erroneous, the Court will not review them.

R. 622. Further, as to plaintiff's credibility, she stated that plaintiff "gave good effort and there were no inconsistencies." *Id.*

In her medical source statement, NP Bocanegra found that plaintiff can lift and carry up to ten pounds occasionally, but never carry more than ten pounds. *Id.* She found that plaintiff can sit for eight hours in an eight-hour workday, and that she can stand and walk for about four hours. R. 622–23. Moreover, NP Bocanegra found that plaintiff can frequently reach, handle, feel, grasp, bend, stoop, kneel, and squat. R. 623.

### 6. *Opinions of State Agency Experts*

In connection with plaintiff's physical RFC, Bert Spetzler, M.D., reviewed plaintiff's medical record in March 2021 and found that there was "unfortunately not enough medical evidence to make a judgment on the claim." R. 93. Dr. Spetzler noted that the only medical source listed is for mental health, and that the while previous sources "show evidence for degenerative changes in the back and lower extremity neuropathy, [] these are dated April and May 2019; none of the sources . . . are newer than September 2019." *Id.*

On reconsideration in November 2021, Jack Hutcheson, M.D., found that the "available evidence shows [plaintiff] remains capable of light work with some postural limitations and protections from heights and hazards due to her alleged balance difficulties; but it is not sufficient to establish a reliable RFC." R. 106. Dr. Hutcheson found that plaintiff has normal physical examination findings that do not support her alleged symptoms, but noted, however, that "due to the age of the exams in the file, a CE is needed to obtain updated findings." *Id.*

### III.   THE ALJ'S DECISION

To evaluate plaintiff's claim of disability, the ALJ followed the sequential five-step analysis set forth in the SSA's regulations. *See* 20 C.F.R. § 416.920(a). The ALJ considered

11

whether plaintiff: (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that meets or medically equals a condition within the SSA's listing of official impairments; and (4) had an impairment that prevents her from engaging in any substantial gainful employment given her RFC.[9]  R. 19–33.

First, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 14, 2020, the application date.  R. 22.

At steps two and three, the ALJ found that plaintiff's degenerative disc disease, peripheral neuropathy, ADHD, and anxiety constituted severe impairments.  *Id.*  The ALJ classified plaintiff's other impairments as non-severe, noting that he considered even the non-severe impairments throughout the decision and when assessing the plaintiff's RFC.  R. 23.  Further, the ALJ determined that plaintiff's severe impairments, either singly or in combination, failed to meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, as required for a finding of disability at step three.  R. 23–26.

The ALJ next found that plaintiff possessed the RFC to perform light work as defined in 20 C.F.R. § 416.967(b).  R. 26–31.  Specifically, the ALJ found that plaintiff was able to "stand and/or walk for six hours in an eight hour workday; and sit for six hours in an eight workday."  R. 31.  Additionally, the ALJ concluded that plaintiff retained the capacity to occasionally lift or carry 20 pounds, and frequently lift or carry ten pounds.  *Id.*  The ALJ also specified the following additional limitations:

> the [plaintiff] is able to frequently climb or balance; occasionally stoop, kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds.  She can occasionally tolerate exposure to concentrated hazards such as unprotected heights or moving machinery.  [Plaintiff] is able to understand, remember, and carry out simple and routine work related instructions and concentrate for periods of two hours on work-

---

[9] The plaintiff had no past relevant work, therefore the ALJ moved directly to step five of the analysis.  R. 31.

related tasks. She can perform non-production rate pace or non-assembly line jobs with occasional workplace changes that are introduced gradually over time. The [plaintiff] is limited to occasional decision-making and no responsibility for the safety of others. She is able to work with the general public, coworkers, and supervisors occasionally.

R. 26.

At step four, the ALJ noted that plaintiff had no past relevant work. R. 31. After reviewing the Dictionary of Occupational Titles ("DOT") and the VE's testimony, at step five the ALJ determined that plaintiff could perform existing jobs in the national economy, including working as a router, office helper, and small products assembler. R. 31–32. Accordingly, the ALJ concluded plaintiff was not under a disability from August 14, 2020, through July 11, 2022, and was ineligible for SSI. R. 33.

## IV.   **STANDARD OF REVIEW**

In reviewing an ALJ's decision, the Court is limited to determining whether the Commissioner applied the proper legal standard in evaluating the evidence and whether substantial evidence in the record supports the decision to deny benefits. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting the substantial evidence standard is "more than a mere scintilla," but "is not high").

When reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Johnson*,

434 F.3d at 653.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]."  *Id.* (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, reversing the denial of benefits is appropriate only if either (a) the record is devoid of substantial evidence supporting the ALJ's determination, or (b) the ALJ made an error of law.  *Id.*

## V.    ANALYSIS

### *The ALJ failed to provide sufficient explanation for finding that the opinions of plaintiff's consultative examiners, Dr. Bridges and NP Bocanegra, were unpersuasive.*

Plaintiff seeks a remand arguing that the ALJ failed to account for the total limiting effects of plaintiff's impairments.  Pl.'s Br. 1, 3.  Specifically, plaintiff argues that the ALJ's findings as to Dr. Bridges and NP Bocanegra's opinions, as well as plaintiff's self-described symptoms, were unsupported and inconsistent with the record, contrary to regulation, and insufficient to permit judicial review.  *Id.* at 10–15; *see* 20 C.F.R. § 416.920c(b).  In conjunction, plaintiff asserts that the ALJ did not appropriately evaluate her self-described limitations as required by *Arakas v. Comm'r Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020).  Pl.'s Br. 1, 15–17; *see* 20 C.F.R. § 416.929(c)(2)–(3).  Plaintiff also argues that the ALJ's errors were not harmless because if the consultative examiners' opinions were properly evaluated, plaintiff would be limited to sedentary work, which would render her disabled based on the SSA's "grid rules."  Pl.'s Br. 9; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12.

The Commissioner argues that substantial evidence supports, and that the ALJ properly assessed the opinions of Dr. Bridges and NP Bocanegra.  Def.'s Br. in Supp. of the Comm'r's Dec.

Denying Benefits and in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Br."), ECF No. 11, at 12–19. The Commissioner contends that "the ALJ properly followed agency regulations in assessing these opinions and adequately explained why these opinions were not supported and not consistent with other evidence in the record." *Id.* at 12. Further, the Commissioner argues that "[a]fter carefully considering [p]laintiff's subjective complaints, the ALJ reasonably found they were not fully supported by the objective medical and other evidence in the record." *Id.* at 19.

**A.      The applicable methodology for reviewing Dr. Bridges and NP Bocanegra's opinions.**

The ALJ must consider and explain the persuasiveness of each medical opinion in the record.[10] 20 C.F.R. § 416.920c(b); *see* 82 Fed. Reg. 5844, at 5854 (noting that the ALJ should "focus more on the content of medical opinions and less on weighing treating relationships against each other"). ALJ review of medical opinions and findings are based upon: (1) supportability, or the relevance and strength of explanations for the opinion; (2) consistency, or the similarity with other opinions; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the relationship, and extent of the relationship; (4) specialization, relating to the training of the source; and (5) other factors, including but not limited to the source's familiarity with other medical evidence and the SSA's policies and requirements. 20 C.F.R. § 416.920c(a), (c).

In assessing persuasiveness, however, an ALJ's chief task is to decide and explain whether an opinion or finding is supported by and consistent with the record.[11]    *Id.* § 416.920c(b)(2)

---

[10] A "medical opinion" is a statement from a medical source about a claimant's limitations and ability to perform physical, mental, and other work demands, and to adapt to a workplace environment, in spite of her impairments. 20 C.F.R. § 416.913(a)(2)(i)–(iv).

[11] Supportability is an internal review that requires an ALJ to consider how "objective medical evidence and supporting explanations presented by a medical source . . . support his or her medical opinions." 20 C.F.R. § 416.920c(c)(1). By comparison, consistency is an external review that

("Therefore, [ALJs] will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions"); *see* 82 Fed. Reg. 5844, at 5853 (describing these as the "two most important factors"). Explanation about the remaining factors is only required when an ALJ concludes that two or more medical opinions are equally supported by and consistent with the record. 20 C.F.R. § 416.920c(b)(3). Moreover, the rules dictate review of a provider's opinions on a collective basis, rather than opinion-by-opinion; negating the need for individual treatment of every medical opinion in the record. *Id.* § 416.920c(b)(1). This framework guides the Court's review below.

**B.**     ***The ALJ did not adequately address whether Dr. Bridges and NP Bocanegra's opinions were supported by and consistent with the record.***

Both Dr. Bridges and NP Bocanegra found that plaintiff was unable to stand or walk more than four hours in an eight-hour workday, and was occasionally able to lift or carry ten pounds.[12] R. 459, 622–23. Despite this, the ALJ concluded that plaintiff "retain[ed] the capacity to . . . stand and/or walk for six hours in an eight hour workday," thus finding that plaintiff was capable of performing light work under the SSA's guidelines. R. 31; *see* 20 C.F.R. § 416.967 (sedentary jobs only require "occasional" walking and standing, whereas light work "requires a good deal of walking or standing."); *see also* SSR 83-10, 1983 WL 31251 ("at the sedentary level of exertion, periods of standing or walking should generally total no more than two hours of an eight-hour workday," whereas "light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday," with sitting occurring intermittently within

_____

requires an ALJ to determine how "consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 416.920c(c)(2).

[12] Dr. Bridges found that plaintiff was only capable of walking less than two hours in an eight-hour workday. R. 459.

16

the remaining time).   As plaintiff points out, the distinction between finding plaintiff able to perform light versus sedentary work "is not meaningless [], because, if limited to sedentary work, given her vocational factors of age and no relevant work experience, [p]laintiff is disabled based [on the] SSA's grid rules."  Pl.'s Br. 9 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12) (internal quotations omitted).[13]  Accordingly, the pertinent question of how long plaintiff can walk and/or stand is at the heart of this disability appeal.

The ALJ first found Dr. Bridges' opinions unpersuasive.  R. 28.  The supportability of Dr. Bridges' medical source statement turns upon his explanation about the consultative examination he performed in April 2019.  R. 455–59; see 20 C.F.R. § 416.920c(c)(1).  To explain his conclusion that Dr. Bridges' opinion was not supported by the examination findings, the ALJ noted that Dr. Bridges observed that plaintiff was in no acute distress, she was able to rise from the waiting room chair independently, and that although Dr. Bridges found "decreased sensation in [plaintiff's] feet bilaterally, [] her remaining physical findings were grossly normal including gait, strength, and neurologic functioning."  R. 28.  Further, the ALJ noted that Dr. Bridges indicated plaintiff was able to continue performing her basic daily living activities.  Id.

Importantly, however, the ALJ made no mention of Dr. Bridges' findings that plaintiff suffers from "decreased lumbar lordosis," "hypertonic lumbar paraspinal muscles and tenderness to palpation over lumbar paraspinal muscles," or "increased lumbar pain with lumbar facet loading

---

[13] See also 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g).  "Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work.  When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains.  However, recently completed education which provides for direct entry into sedentary work will preclude such a finding.  For this age group, even a high school education or more (ordinarily completed in the remote past) would have little impact for effecting a vocational adjustment unless relevant work experience reflects use of such education."

maneuvers," all findings that bear on how long plaintiff can stand and walk. R. 458. Moreover, while noting Dr. Bridges' opinion that plaintiff appeared in pain when walking without shoes, the ALJ made no mention of Dr. Bridges' systems review, during which plaintiff reported general weakness, joint pain, and back pain. R. 28, 456. Further, the ALJ failed to mention that Dr. Bridges found plaintiff's claims of progressively worsening low back pain and lower extremity neuropathy to be credible based on the "exam findings and medical documentation." R. 28, 459. The ALJ also neglected to comment on Dr. Bridges' indication that plaintiff used a TENS unit, back brace, gel socks, gabapentin, naproxen, aleve, dilaudid, and oxycodone to attempt to relieve her pain, with little success. R. 455, 459. The ALJ's brief explanation for finding Dr. Bridges' opinions to be unsupported is insufficient.

Moreover, the ALJ inadequately addressed the consistency factor with respect to Dr. Bridges' opinions. R. 28–29. The ALJ stated that Dr. Bridges' opinions are "not consistent with the entirely conservative treatment history or [plaintiff's] documented adaptive behavior, including her stated ongoing ability to care for personal needs, clean, cook, and cut the grass, all activities inconsistent with a sedentary residual functional capacity." *Id.* The ALJ neglected to assess, however, whether Dr. Bridges' findings were consistent with plaintiff's treatment for low back and foot pain dating back to 2017. R. 341, 347, 366, 368–71, 379, 386–87. Nor did the ALJ compare Dr. Bridges' opinions to those of NP Bocanegra, who provided the only medical opinion in the record during the relevant time period. Although the ALJ found plaintiff's "adaptive behavior" and ability to care for her own personal needs inconsistent with a sedentary RFC, the ALJ neglected to reconcile Dr. Bridges' opinions with plaintiff's statements that she is "unable to sit or stand for any length of time," that she sits down while showering, cooking, and grocery shopping, that she uses a back brace and TENS unit "all the time," and that she "seldom drives

18

and prefers not to go out alone for fear of falling." R. 273–79. Moreover, although the ALJ made much of plaintiff's "adaptive behavior," he failed to ask plaintiff about her activities of daily living at the hearing.[14] *See* R. 49–56; *see also Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) ("Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the [plaintiff], the case should be remanded."); *see also Woods v. Berryhill*, 888 F.3d 686, 694–95 (4th Cir. 2018) (holding that an ALJ "may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them."). For these reasons, the ALJ's evaluation of the consistency of Dr. Bridges' opinions was incomplete.

Similarly, the supportability of NP Bocanegra's opinions turns on the adequacy of the explanation she provided about the consultative examination of plaintiff in May 2022. R. 617–23; *see* 20 C.F.R. § 416.920c(c)(1). The ALJ found NP Bocanegra's medical source statement "to be of little persuasive value, as the adopted exertional restrictions remain unsupported by the clinical findings of the examination, which noted decreased sensation in the feet but otherwise normal strength, gait, station, and ranges of motion." R. 29–30. Notably, however, the ALJ did not acknowledge NP Bocanegra's findings that plaintiff exhibited "tenderness with palpation" in the midline spine, along with paraspinal muscle tenderness and positive triggers points. R. 622. Moreover, the ALJ did not discuss NP Bocanegra's finding that plaintiff had a positive straight leg raise bilaterally and decreased sensation to touch in her "lower extremities up to mid-calf." *Id.* Further, the ALJ failed to comment on NP Bocanegra's finding of plaintiff's subjective complaints

---

[14] Plaintiff testified at the hearing that she cannot do as much as she used to as her condition has "gotten worse over the years." R. 64. Specifically, plaintiff testified that she now "stay[s] away from" the dishes, cannot carry the laundry basket, does not push the vacuum, sits on a stool while cooking dinner, and sits down while showering. *Id.*

to be credible, given that, during the exam, she "gave good effort and there were no inconsistencies." *Id.* Given these shortcomings, as well as the failure to grapple with the only medical opinion in the relevant period about plaintiff's limited ability to stand or walk during the workday, the ALJ failed to properly consider the supportability of NP Bocanegra's opinions.

Further, the ALJ did not sufficiently address the consistency factor as it relates to NP Bocanegra's findings, stating only that her opinions remain "inconsistent with the entirely outpatient treatment history and [plaintiff's] documented adaptive behaviors discussed above." R. 30. In the same manner as he dismissed Dr. Bridges' opinions, the ALJ concluded that NP Bocanegra's findings were inconsistent with the record without comparing them to plaintiff's previous treatment for back and foot pain, to Dr. Bridges' consultative examination, or to plaintiff's self-described symptoms. *See* R. 29–30. Based on this bare explanation, the ALJ's discussion of the consistency of NP Bocanegra's opinions was inadequate.

The ALJ also neglected to reconcile his RFC finding with that of the state agency experts, who each stated that there was not enough evidence in the record "to establish a reliable RFC." R. 93, 106. Moreover, on reconsideration in November 2021, Dr. Hutcheson stated that "a [consultative examination] is needed to obtain updated findings." R. 106. Despite this indication from a state agency expert that NP Bocanegra's exam was needed to establish a reliable RFC, the ALJ found her opinions to be "of little persuasive value." R. 29–30. Instead, the ALJ found that plaintiff possessed the RFC to sit or stand for six hours in an eight-hour workday, a finding made by neither the consultative examiners, nor the state agency experts.[15] R. 31.

---

[15] The ALJ also found that plaintiff possessed the capacity to occasionally lift up to 20 pounds and frequently lift 10 pounds, although both Dr. Bridges and NP Bocanegra opined that she could only occasionally lift up to 10 pounds. R. 31, 459, 622.

Although plaintiff's RFC is an administrative assessment reserved to the Commissioner, the ALJ was nonetheless required to base his RFC finding on plaintiff's "subjective complaints, the objective medical evidence, and the opinions of treating, examining, and non-examining physicians." *Felton-Miller v. Astrue*, 459 F. App'x. 226, 231 (4th Cir. 2011) (holding that although an ALJ is not obligated to obtain a medical opinion to determine the RFC, it remained the ALJ's obligation to base the RFC on the subjective complaints, objective medical evidence, and the opinions of treating, examining and non-examining physicians); 20 C.F.R. §§ 416.945(a), 416.946(c); *see also* SSR 96-8p (identifying the RFC finding as an administrative assessment and outlining the relevant criteria to be used in making the determination). In this case, the ALJ erred by failing to fully and properly evaluate the opinions of Dr. Bridges and NP Bocanegra and explain the basis for his contrary conclusion about plaintiff's ability to stand and walk at work. R. 458, 622; *see Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (holding that "the ALJ's designation of [plaintiff's] course of treatment as 'conservative' amounts to improperly 'playing doctor' in contravention of the requirements of applicable regulations.") (citing 20 C.F.R. § 416.929). Accordingly, the ALJ erred by failing to consider relevant medical evidence, as well as plaintiff's testimony, that goes directly to the issue of plaintiff's ability to perform light or sedentary work. *Lewis*, 858 F.3d at 869 ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a finding of disability.") (*quoting Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

The Court makes no finding as to whether Dr. Bridges and NP Bocanegra's opinions are supported by or consistent with the record. The Court does find, however, that the ALJ's limited explanation for finding Dr. Bridges' opinions unpersuasive and NP Bocanegra's opinions to be of

little persuasive value was insufficient to allow for meaningful judicial review.   Accordingly, remand is necessary.

C.      *Plaintiff's remaining argument for overturning the ALJ's decision is closely tied to the error justifying the recommended remand and no need exists to address it.*

Plaintiff also argues that her self-described limitations are consistent with the evidence and that the ALJ "did not appropriately evaluate her self-described limitations as required by *Arakas v. Comm'r Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020)."   Pl.'s Br. 1, 15–17; *see Arakas*, 983 F.3d at 95–96 (holding that the ALJ erred by "improperly discounting [plaintiff's] subjective complaints of pain and fatigue, based largely on the lack of objective medical evidence substantiating her statements.").   As this argument is linked to the error discussed above, no need exists to address it as the matter will need to be revisited upon remand.

## VI.   <u>RECOMMENDATION</u>

For these reasons, the Court recommends that plaintiff's request for remand (ECF No. 10) be **GRANTED**, the final decision of the Commissioner be **VACATED**, and the case be **REMANDED** to the Commissioner for further proceedings.   On remand, the ALJ should more fully evaluate and explain whether Dr. Bridges and NP Bocanegra's opinions are supported by and consistent with the record to facilitate judicial review.   The ALJ should also more fully consider and explain whether plaintiff's self-described symptoms are supported by and consistent with the record.

## VII.   <u>REVIEW PROCEDURE</u>

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report

is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

  2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

  The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

_____

Robert J. Krask

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 22, 2023